No. 15-15233

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

BOURNE VALLEY COURT TRUST,

Plaintiff - Appellee,

vs.

WELLS FARGO BANK, N.A.,

Defendant - Appellant.

On Appeal from the U.S. District Court for Nevada
1:13-cv-00649-PMP-NJK, the Honorable Philip M. Pro

**APPELLEE'S ANSWERING  BRIEF**

Michael F. Bohn, Esq.
Nevada Bar No. 1641
mbohn@bohnlawfirm.com
LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada  89119
Telephone: (702) 642-3113
Facsimile: (702) 642-9766

Attorney for plaintiff/appellee

## **FRAP 26.1 DISCLOSURE**

Counsel for plaintiff/appellee states that plaintiff/appellee, Bourne Valley Court Trust, is a Nevada Trust.  Resources Group, LLC,  a Nevada limited-liability company, is the trustee of the trust.  The manager for Resources Group, LLC  is Iyad Haddad.

No publicly held corporation owns 10% or more of either Bourne Valley Court Trust or Resources Group, LLC.

1

**TABLE OF CONTENTS**

2

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iii

3

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

4

5

Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   iv

6

Statutes and rules. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   vii

7

Other authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   viii

8

I.   ISSUES PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

9

II.   STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

10

III.   SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

11

IV.   ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12

13

1.   Wells Fargo's deed of trust was extinguished by the foreclosure
sale held on May 7, 2012. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

14

15

2.   The foreclosure process in NRS Chapter 116 does not violate
due process because "state action" is not involved and because
the statute requires that copies of the notice of default and the
notice of sale be mailed to holders of "subordinate" interests. . . . . . 6

16

17

3.   The extinguishment of Wells Fargo's deed of trust pursuant to
NRS Chapter 116 does note violate the takings clause of the
Fifth Amendment to the United States Constitution. . . . . . . . . . . . 14

18

19

4.   The "commercial reasonableness" requirement in the Uniform
Commercial Code does not apply to an HOA foreclosure sale. . . . . 16

20

21

5.   There is a conclusive presumption that the HOA foreclosure
sale was properly conducted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

22

V.   CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

23

VI.   CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . 27

24

VII.   STATEMENT OF RELATED CASES. . . . . . . . . . . . . . . . . . . . . . . . . 27

25

VIII.   CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

26

27

28

# TABLE OF AUTHORITIES

## CASES:

### Federal Cases

Apao v. Bank of New York, 324 F.3d 1091 (9th Cir. 2003). . . . . . . . . . . . . . . . 6-7

Armstrong v. United States, 364 U.S. 40 (1960). . . . . . . . . . . . . . . . . . . . . . . . 15

BFP v. Resolution Trust Corporation, 511 U.S. 531 (1994). . . . . . . . . . . . . . . . 20

Butner v. United States, 440 U.S. 48 (1979).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Charmicor, Inc. v. Deaner, 572 F.2d 694 (9th Cir. 1978).. . . . . . . . . . . . . . . . . . 7

Flagg Bros., Inc. v. Brooks, 436 U.S. 149 (1978).. . . . . . . . . . . . . . . . . . . . . . . . 6

Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935). . . . . . . . . . . 15

Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922 (1982). . . . . . . . . . . . . . . . . . . . 6

Mennonite Bd. of Missions v. Adams, 462 U.S. 791 (1983). . . . . . . . . . . . . . . 7, 11

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950). . . . . . . . . 11

7912 Limbwood Court Trust v. Wells Fargo Bank, N.A.,

    979 F. Supp. 2d 1142 (D. Nev. 2013).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Suchy, 786 F.2d 900 (9th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Tulsa Prof'l Collection Servs., Inc. v.Pope, 485 U.S. 478 (1988). . . . . . . . . . . . . 11

United States v. Security Industrial Bank, 459 U.S. 10 (1982). . . . . . . . . . . . . . . 15

### State Cases

Albice v. Premier Mortgage Services of Washington, Inc.,

    157 Wash. App. 912, 239 P.3d 1148 (2010),  aff'd,

    174 Wash. 2d 560, 276 P.3d 1277 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . 23

American Bank and Trust Co. v. Price, 688 So.2d 536 (La. App. 1996). . . . . . . 21

iv

Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246 (1979). . . . . . . . . . . . . . . . . .  25

Board of County Comm'rs v. CMC of Nevada,

    99 Nev. 739,  670 P.2d 102 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Brunzell v. Woodbury, 85 Nev. 29, 449 P.2d 158 (1969). . . . . . . . . . . . . . . . . . 19

Burson v. Capps, 440 Md. 328, 102 A.3d 353 (2014). . . . . . . . . . . . . . . . . . . . . 21

City Council of Reno v. Reno Newspapers,

    105 Nev. 886, 784 P.2d 974 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Deposit Insurance Bridge Bank, N.A. Dallas v. McQueen,

    804 S.W. 2d 264 (Tex. App. 1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Firato v.  Tuttle, 48 Cal.2d 136, 308 P.2d 333 (1957). . . . . . . . . . . . . . . . . . 24-25

Foley v. Kennedy, 110 Nev. 1295, 885 P.2d 583 (1994). . . . . . . . . . . . . . . . 11-12

Fontenot v. Wells Fargo Bank,

    198 Cal. App. 4th 256, 129 Cal. Rptr. 3d 467 (2011). . . . . . . . . . . . . . . . . 21

Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963). . . . . . . . . . . . . . 16, 17, 19

Levers v. Rio King Land & Investment Co.,

    93 Nev. 95, 560 P.2d 917 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

 Leyva v. National Default Servicing Corp.,

    127 Nev. 3, 255 P.3d 1275, 1279 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Long v. Towne, 98 Nev. 11, 639 P.2d 528 (1982). . . . . . . . . . . . . . . . . . . . . . . . 19

McNeill Family Trust v. Centura Bank, 60 P.3d 1277 (Wyo. 2033). . . . . . . . . . . 21

Meeker v. Eufaula Bank & Trust,

    208 Ga. App. 702, 431 S.E. 2d 475 (Ga. App 1993). . . . . . . . . . . . . . . . . . 21

Moeller v. Lien 25 Cal. App. 4th 822, 30 Cal. Rptr. 2d 777 (1994). . . . .  21, 23-24

v

Moresi v. Swift, 15 Nev. 215 (1880).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Myles v. Cox, 217 So. 2d 31 (Miss. 1968). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Oller v. Sonoma County Land Title Company,

    137 Cal. App. 2d 633, 290 P.2d 880 (1955). . . . . . . . . . . . . . . . . . . . . . . . . . 16

Pro-Max Corp. v. Feenstra, 117 Nev. 90, 16 P.3d 1074 (2001). . . . . . . . . . . . 22-23

Public Employees' Benefits Program v. Las Vegas Metropolitan Police

    Department, 124 Nev. 138, 179 P.3d 542 (2008). . . . . . . . . . . . . . . . . . . . . . 12

Rosenberg v. Smidt, 727 P.2d 778 (Alaska 1986). . . . . . . . . . . . . . . . . . . . . . . . 23

Runkle v. Gaylord, 1 Nev. 123 (1865). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Sereika v. State, 114 Nev. 142, 955 P.2d 175 (1998). . . . . . . . . . . . . . . . . . . . . . 11

SFR Investments Pool 1, LLC v. U.S. Bank, N.A.,

    130 Nev., Adv. Op. 75, 334 P.3d 408 (2014). . . . . . . . 4-5, 6, 7, 8, 15, 18, 21

Sheriff v. Wu, 101 Nev. 687, 708 P.2d 305 (1985). . . . . . . . . . . . . . . . . . . . . . . . 12

6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.,

    85 Cal. App. 4th 1279, 102 Cal. Rptr. 2d 711 (2011). . . . . . . . . . . . . . . . . 21

Southern Nevada Homebuilders v. Clark County ,

    121 Nev. 446, 117 P.3d 171 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

State v. Steven Daniel P. (In re Steven Daniel P.),

    129 Nev., Adv. Op. 73, 309 P.3d 1041(2013). . . . . . . . . . . . . . . . . . . . . . . 10

Timm v. Dewsnup 86 P.3d 699 (Utah 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Turner v. Dewco Services, Inc., 87 Nev. 14, 479 P.2d 462 (1971). . . . . . . . . . . . 19

25 Corp. v. Eisenman Chemical Co., 101 Nev. 664, 709 P.2d 164 (1985). . . . . . 25

/ / /

Whitehead v. Nevada Commission on Judicial Discipline,

    110 Nev. 380, 878 P.2d 913 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Will v. Mill Condominium Owners' Association,

    176 Vt. 380, 848 A.2d 336 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**STATUTES AND RULES**:

**Federal Statutes**

11 U.S.C. § 522. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bankruptcy Act § 75. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bankruptcy Reform Act of 1978. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**State Statutes**

AS 34.20.080. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

AS 34.20.090. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

NRS 47.240. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

NRS 104.9109. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

NRS 104.9610. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

NRS 106.240. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

NRS 107.080. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

NRS 107.090. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8, 9, 10, 11, 12, 13, 14, 18

NRS 116.3116 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3-4, 7

NRS 116.31162. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18, 19

NRS 116.31163. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

NRS 116.311635. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

NRS 116.31166. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 19, 20, 21, 22, 23

NRS 116.31168. . . . . . . . . . . . . . . . . . . . . . . . 3, 7, 8, 9, 10, 11, 12, 13, 14, 18, 19

RCW 61.24.040. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

**Federal Rules**

Fed. R. Evid. 201. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**OTHER AUTHORITIES:**

Miller & Starr, <u>California Real Property 3d</u> §10:210. . . . . . . . . . . . . . . . . . . 21

Uniform Commercial Code. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 18

Uniform Common Interest Ownership Act (1982). . . . . . . . . . . . . . . . . 19, 20, 23

United States Constitution, Fifth Amendment. . . . . . . . . . . . . . . . . . . . . . 2, 14

# I. **ISSUES PRESENTED**

1. Whether the district court properly determined that Wells Fargo's deed of trust was extinguished by the HOA foreclosure sale held on May 7, 2012.

2. Whether Nevada's HOA foreclosure statute is unconstitutional on its face and violates due process rights of "subordinate" lien holders.

3. Whether Nevada's HOA foreclosure statute violates the Takings Clause of the Fifth Amendment to the United States Constitution.

4. Whether the court should impose upon every HOA foreclosure sale a commercial reasonableness requirement that is not provided by statute.

5. Whether the district court correctly applied the conclusive presumption in NRS 116.31166.

# II. **STATEMENT OF THE CASE**

Bourne Valley Court Trust (hereinafter "plaintiff") filed its complaint (5 ER 849-852) in the district court for Clark County, Nevada against Wells Fargo Bank, N.A. (hereinafter "Wells Fargo") seeking quiet title and declaratory relief that the deed of trust recorded on May 5, 2006 (2 ER 134-152) and re-recorded on May 24, 2006 (2 ER 153-170)against the real property located at 410 Horse Pointe Avenue, North Las Vegas, Nevada (hereinafter "Property") was extinguished by the HOA foreclosure sale conducted by the Parks Homeowners Association (hereinafter "HOA") pursuant to NRS Chapter 116.  Plaintiff filed an amended complaint on March 1, 2013. (5 ER 861-863)

Defendant MTC Financial Inc. dba Trustee Corps filed a petition for removal on April 17, 2013 based on diversity of citizenship. (5 ER 841-890)

Plaintiff filed a motion for summary judgment on September 26, 2014. (2 ER 90-103) A copy of the grant, bargain, sale deed from the Horse Pointe Avenue Trust to plaintiff is Exhibit 1 to the motion. (2 ER 95-98) A copy of the HOA foreclosure deed to the Horse Pointe Avenue Trust is Exhibit 2 to the motion.  (2 ER 99-103) Wells Fargo filed an opposition to plaintiff's motion for summary judgment on

1

November 3, 2014. (2 ER 16-89) Plaintiff filed a reply in support of its motion on December 1, 2014.

On January 23, 2015, the district court entered its order granting plaintiff's motion for summary judgment. (1 ER 5-14) On January 23, 2015, judgment was entered in favor of plaintiff quieting title as to any liens or encumbrances asserted by Wells Fargo. (1 ER 1-4)

Wells Fargo filed its notice of appeal on February 6, 2015. (2 ER 15)

### III. **SUMMARY OF THE ARGUMENT**

NRS 116.3116(2) granted to the HOA a superpriority lien that had priority over the earlier recorded deed of trust assigned to Wells Fargo. The nonjudicial foreclosure sale of this superpriority lien at the public auction held on May 7, 2012 extinguished Wells Fargo's "subordinate" deed of trust.

The nonjudicial foreclosure process in NRS Chapter 116 is not unconstitutional and does not violate due process because it does not involve "state action," and copies of the notice of default and notice of sale are required to be mailed to holders of interests "subordinate" to the HOA's lien. Wells Fargo offered no evidence that the HOA failed to mail these notices to Wells Fargo.

The statute does not violate the takings clause in the Fifth Amendment to the United States Constitution because the property was not acquired for "public use," and Wells Fargo acquired its interest in the deed of trust with record notice of the HOA's superpriority lien rights.

No provision of the statute requires that an HOA foreclosure sale be "commercially reasonable," and the case law interpreting Article 9 of the Uniform Commercial Code does not apply to an HOA foreclosure sale governed by NRS Chapter 116.

Common law contains a presumption that the HOA foreclosure sale was conducted validly. The recitals in the foreclosure deed recorded on May 29, 2012 are "conclusive proof" that the HOA complied with all statutory requirements for the

2

foreclosure of its superpriority lien, which extinguished the "subordinate" deed of trust held by Wells Fargo. In opposition to plaintiff's motion for summary judgment, Wells Fargo offered no evidence that the HOA failed to mail to it copies of the notice of default and the notice of sale as required by NRS 116.31168(1), and by incorporation, NRS 107.090. Wells Fargo took no action to prevent the public auction held on May 7, 2012. Wells Fargo has no right to have the sale set aside.

## IV. ARGUMENT

**1. Wells Fargo's deed of trust was extinguished by the foreclosure sale held on May 7, 2012.**

In Butner v. United States, 440 U.S. 48 (1979), the Supreme Court stated that "[p]roperty interests are created and defined by state law." Id. at 55. The Supreme Court also stated:

> The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

> Id.

Under Nevada law, a deed of trust is a conveyance of land that must comply with the statute of frauds. Leyva v. National Default Servicing Corp., 127 Nev. 3, 255 P.3d 1275, 1279 (2011).

NRS 116.3116 provides in part:

**Liens against units for assessments.**

1. **The association has a lien on a unit for** any construction penalty that is imposed against the unit's owner pursuant to NRS 116.310305, **any assessment levied against that unit or any fines imposed against the unit's owner from the time the construction penalty, assessment or fine becomes due**. Unless the declaration otherwise provides, any penalties, fees, charges, late charges, fines and interest charged pursuant to paragraphs (j) to (n), inclusive, of subsection 1 of NRS 116.3102 are enforceable as assessments under this section. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.

2. **A lien under this section is prior** to all other liens and encumbrances on a unit **except:**

(a) Liens and encumbrances recorded before the recordation of the

3

declaration and, in a cooperative, liens and encumbrances which the association creates, assumes or takes subject to;

(b) **A first security interest on the unit** recorded before the date on which the assessment sought to be enforced became delinquent or, in a cooperative, the first security interest encumbering only the unit's owner's interest and perfected before the date on which the assessment sought to be enforced became delinquent; and

(c) Liens for real estate taxes and other governmental assessments or charges against the unit or cooperative.

**The lien is also prior to all security interests described in paragraph (b)** to the extent of any charges incurred by the association on a unit pursuant to NRS 116.310312 and **to the extent of the assessments for common expenses based on the periodic budget adopted by the association pursuant to NRS 116.3115 which would have become due in the absence of acceleration during the 9 months immediately preceding institution of an action to enforce the lien,** unless federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien. If federal regulations adopted by the Federal Home Loan Mortgage Corporation or the Federal National Mortgage Association require a shorter period of priority for the lien, the period during which the lien is prior to all security interests described in paragraph (b) must be determined in accordance with those federal regulations, except that notwithstanding the provisions of the federal regulations, the period of priority for the lien must not be less than the 6 months immediately preceding institution of an action to enforce the lien. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association. (emphasis added)

By its clear terms, NRS 116.3116 (2) provides that the super-priority lien for 9 months of charges is "prior to all security interests described in paragraph (b)." The first deed of trust, recorded on May 5, 2006 (2 ER 134-152), re-recorded on May 24, 2006 (2 ER 154-170), and subsequently assigned to Wells Fargo on March 7, 2011 (2 ER 172) and on October 14, 2011 (2 ER 187-188), falls squarely within the language of paragraph (b). The statutory language does not limit the nature of the HOA's "priority" in any way.

In its decision in the case of <u>SFR Investments Pool 1, LLC v. U.S. Bank, N.A.</u>, 130 Nev., Adv. Op. 75, 334 P.3d 408, 409 (2014), the Nevada Supreme Court stated:

NRS 116.3116 gives a homeowners' association (HOA) a superpriority lien on an individual homeowner's property for up to nine months of unpaid HOA dues. With limited exceptions, this lien is "prior

4

to all other liens and encumbrances" on the homeowner's property, even a first deed of trust recorded before the dues became delinquent. NRS 116.3116(2). We must decide whether this is a true priority lien such that its foreclosure extinguishes a first deed of trust on the property and, if so, whether it can be foreclosed nonjudicially. We answer both questions in the affirmative and therefore reverse.

At the conclusion of its opinion, the Nevada Supreme Court stated:

NRS 116.3116(2) gives an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust. Because Chapter 116 permits nonjudicial foreclosure of HOA liens, and because SFR's complaint alleges that proper notices were sent and received, we reverse the district court's order of dismissal. In view of this holding, we vacate the order denying preliminary injunctive relief and remand for further proceedings consistent with this opinion.

334 P.3d at 419.

As acknowledged by Wells Fargo at page 5 of appellant's opening brief, the HOA recorded a notice of delinquent assessment lien on August 30, 2011 (2 ER 180-181), a notice of default and election to sell under notice of delinquent assessment (lien) on October 12, 2011 (2 ER 183-185), and a notice of trustee/foreclosure sale on April 9, 2012. (2 ER 190)

The trustee's deed upon sale, recorded on May 29, 2012, attached as Exhibit 2 to plaintiff's motion for summary judgment (ER 100-103) includes the following recitals on page 1 of the deed (ER 100):

Default occurred as set forth in the Notice of Default and Election to Sell which was recorded October 12, 2011 as instrument/document number 201110120001641 in the office of the Recorder of said County. After the expiration of ninety (90) days from the recording and mailing of copies of the Notice of Default and Election to Sell, a Notice of Trustee's Sale was recorded on April 09, 2012 as instrument/document number 201204090000179 in the Office of the Recorder of said County and the Association claimant, The Parks Homeowners Association, demanded that such sale be made.

All requirements of law regarding the recording and the mailing of copies of the Notice of Delinquent Assessment, Notice of Default and Election to Sell, and the recording, mailing, posting and publication of copies of the Notice of Trustee's Sale have been complied with.

In its opposition to plaintiff's motion for summary judgment (2 ER 16-89), defendant did not identify or produce evidence of any failure by the HOA to comply

5

1  with the statutory requirements for the HOA foreclosure sale held on May 7, 2012.

2  Applying the holding in  SFR Investments Pool 1, LLC v. U.S. Bank, N.A. to the

3  present case, the district court reached the correct conclusion that the nonjudicial

4  foreclosure of the HOA's super priority lien extinguished the "first security interest"

5  assigned to Wells Fargo.

6  **2.    The foreclosure process in NRS Chapter 116 does not violate**
       **due process because "state action" is not involved and because**
7      **the statute requires that copies of the notice of default and the**
       **notice of sale be mailed to holders of "subordinate" interests.**

8  At pages 8 to 16 of appellant's opening brief, Wells Fargo argues that the

9  nonjudicial foreclosure process under NRS Chapter 116 fails to require actual notice

10  to lenders and violates constitutional rights to due process.

11  On the other hand, in Lugar v. Edmondson Oil Co., Inc., 475 U.S. 922 (1982),

12  the U.S. Supreme Court recognized  that "[o]ur cases have accordingly insisted that

13  the conduct allegedly causing the deprivation of a federal right be fairly attributable

14  to the State" and that "fair attribution" required a two-part approach: 1) "the

15  deprivation must be caused by the exercise of some right or privilege created by the

16  State"; and 2) "the party charged with the deprivation must be a person who may

17  fairly be said to be a state actor." Id. at 937. In Lugar, the Court found that "joint

18  participation" between a private party and the Clerk of the state court who issued a

19  writ of attachment, which was then executed by the County Sheriff, satisfied the

20  "state actor" requirement.

21  The Court in Lugar cited its prior ruling in Flagg Bros., Inc. v. Brooks, 436

22  U.S. 149 (1978), and the Court acknowledged that even where the state was

23  responsible for creating a statute, "[a]ction by a private party pursuant to this statute,

24  without something more, was not sufficient to justify a characterization of that party

25  as a 'state actor.'" 475 U.S. at 939.  Similarly, in the case of Apao v. Bank of New

26  York, 324 F.3d 1091, 1092 (9th Cir. 2003), this Court rejected a due process

27  challenge to Hawaii's nonjudicial foreclosure statute and stated that there had been

28

6

"no legal or historical development in the intervening years that would require a departure from prior authority." This court's prior decision in <u>Charmicor, Inc. v. Deaner</u>, 572 F.2d 694 (9th Cir. 1978), rejected a due process challenge to Nevada's nonjudicial foreclosure statute.

The decision in <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791 (1983), upon which Wells Fargo relies, is unlike the present case because that case involved a tax sale conducted by the county treasurer and because the Indiana statute did not require any written notice to be provided by mail or personal service to mortgagees whose liens were inferior to the tax lien. No state action is involved in a nonjudicial foreclosure sale by an HOA, and NRS 116.31168(1) expressly provides that the provisions of NRS 107.090 apply to an HOA lien foreclosure "as if" the lien were a deed of trust being foreclosed. Reading NRS 107.090(3)(b) in this manner means that written notice is provided by mail to "each other person with an interest" whose interest is "subordinate" to the HOA's super priority lien.

Pursuant to NRS 116.3116(2), the deed of trust held by Wells Fargo is "subordinate" to the HOA's super priority lien. As a result, NRS 107.090 (as incorporated by NRS 116.31168(1)) required that copies of both the notice of default (NRS 107.090(3)) and the notice of sale (NRS 107.090(4)) be mailed by the HOA to Wells Fargo as the holder of an interest "subordinate" to the HOA's super priority lien. In <u>SFR Investments Pool 1, LLC v. U.S. Bank, N.A.</u>, 130 Nev., Adv. Op. 75, *21-22, 334 P.3d 408, 418 (2014), the Nevada Supreme Court adopted this interpretation of the statute by stating:

> In view of the fact that the "requirements of law" include compliance with NRS 116.31162 through NRS 116.31168 and, **by incorporation, NRS 107.090,** *see* **NRS 116.31168(1)**, we conclude that U.S. Bank's due process challenge to the lack of adequate notice fails, at least at this early stage of the proceeding. (emphasis added)

NRS 116.31166(1) states that the recitals in the foreclosure deed recorded on May 29, 2012 (2 ER 100-101) are "conclusive proof" that copies of both the notice of default and election to sell, recorded on October 12, 2011, and the notice of

7

1
2
trustee/foreclosure sale, recorded on April 9, 2012, were mailed to Wells Fargo as required by statute. Wells Fargo produced no evidence disproving the recitals.

3
4
5
6
7
8
At pages 13 to 16 of appellant's opening brief, Wells Fargo argues that the statute requires notice to a lender only if the lender first requests notice. This argument ignores the express provisions of NRS 107.090, as incorporated by NRS 116.31168(1), that require copies of both the notice of default and the notice of sale to be mailed to holders of "subordinate" interests even if they do not record or mail to the HOA a request for notice.

9
10
11
12
13
In <u>SFR Investments Pool 1, LLC v. U.S. Bank, N.A.</u>, 130 Nev., Adv. Op. 75, 334 P.3d 408 (2014), the Nevada Supreme Court painstakingly analyzed each of the foreclosure requirements in NRS Chapter 116 and called the statutory scheme "elaborate." Rejecting U.S. Bank's claim that there was a due process violation, the Nevada Supreme Court stated:

14
15
16
17
18
19
20
21
22
23
24
**"The provisions of NRS 107.090," governing notice to junior lienholders and others in deed-of-trust foreclosure sales, "apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed." NRS 116.31168(1).** The HOA must provide the homeowner notice of default and election to sell; it also must notify "[e]ach person who has requested notice pursuant to NRS 107.090 or 116.31168" and "[a]ny holder of a recorded security interest encumbering the unit's owner's interest who has notified the association, 30 days before the recordation of the notice of default, of the existence of the security interest." NRS 116.31163(1), (2). The homeowner must be given at least 90 days to pay off the lien. NRS 116.31162. If the lien is not paid off, then the HOA may proceed to foreclosure sale. *Id.* Before doing so, the HOA must give notice of the sale to the owner and to the holder of a recorded security interest if the security interest holder "has notified the association, before the mailing of the notice of sale of the existence of the security interest." NRS 116.311635(1)(b)(2); ***see* NRS 107.090(3)(b), (4) (requiring notice of default and notice of sale to "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust".** (Emphasis added)

334 P.3d at 411.

25
26
27
28
At page 14 of appellant's opening brief, however, Wells Fargo asserts that the caption to NRS 116.31168 limits the language in NRS 116.31168(1) and that "Nevada Revised Statutes § 116.31168 likewise does not require that an HOA

8

provide notice to the lender unless the lender first requests it." This argument ignores the express language in NRS 107.090(3)(b) that requires that notice be mailed to holders of interests "subordinate" to the HOA's lien even if the holder of the interest does not request it.

NRS 116.31168 provides in part:

**Foreclosure of liens: Requests by interested persons for notice of default and election to sell; right of association to waive default and withdraw notice or proceeding to foreclose.**

1**. The provisions of NRS 107.090 apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed**. The request must identify the lien by stating the names of the unit's owner and the common-interest community. (emphasis added)

NRS 107.090 provides in part:

**Request for notice of default and sale: Recording and contents; mailing of notice; request by homeowners' association; effect of request.**

1. As used in this section, "person with an interest" means any person who has or claims any right, title or interest in, or lien or charge upon, the real property described in the deed of trust, as evidenced by any document or instrument recorded in the office of the county recorder of the county in which any part of the real property is situated.

2. **A person with an interest** or any other person who is or may be held liable for any debt secured by a lien on the property desiring a copy of a notice of default or notice of sale under a deed of trust with power of sale upon real property **may at any time after recordation of the deed of trust record in the office of the county recorder** of the county in which any part of the real property is situated **an acknowledged request for a copy of the notice of default or of sale**. The request must state the name and address of the person requesting copies of the notices and identify the deed of trust by stating the names of the parties thereto, the date of recordation, and the book and page where it is recorded.

3. The trustee or person authorized to record **the notice of default** shall, within 10 days after the notice of default is recorded and mailed pursuant to NRS 107.080, cause to be deposited in the United States mail an envelope, registered or certified, return receipt requested and with postage prepaid, containing a copy of the notice, addressed to:

(a) Each person who has recorded a request for a copy of the notice; **and**

**(b) Each other person with an interest whose interest or claimed interest is subordinate to the deed of trust.**

4. The trustee or person authorized to make the sale shall, at least 20 days before the date of sale, cause to be deposited in the United States

mail an envelope, registered or certified, return receipt requested and with postage prepaid, containing a copy of **the notice of time and place of sale**, addressed to **each person described in subsection 3**. (emphasis added)

In State v. Steven Daniel P. (In re Steven Daniel P.), 129 Nev., Adv. Op. 73, 309 P.3d 1041, 1046 (2013), the Nevada Supreme Court applied the concept of incorporating a statute by reference in the context of NRS Chapter 62C and stated:

The United States Supreme Court has held that "[w]here one statute adopts the particular provisions of another by a specific and descriptive reference to the statute or provisions adopted, the effect is the same as though the statute or provisions adopted had been incorporated bodily into the adopting statute." Hassett v. Welch, 303 U.S. 303, 314 (1938) (quoting 2 J.G. Sutherland & John Lewis, *Statutes and Statutory Construction* 787 (2d ed. 1904)); *see also* State ex rel. Walsh v. Buckingham, 58 Nev. 342, 349, 80 P.2d 910, 912 (1938) ("A statute by reference made a part of another law becomes incorporated in it and remains so as long as the former is in force.")

Consequently, the provisions of NRS 107.090 must be read as if they were "incorporated bodily" into NRS Chapter 116.

At page 15 of appellant's opening brief, Wells Fargo states that because the caption to NRS 116.31168 only refers to requests for *notice of default*, the language in NRS 116.31168(1) does not incorporate NRS 107.090(4) requiring that a copy of the notice of time and place of sale be mailed to holders of interests "subordinate" to the HOA lien. To the contrary, NRS 116.31168(1) expressly incorporates "[t]he provisions of NRS 107.090" and not just the provisions of NRS 107.090(3), which require mailing of the notice of default. NRS 107.090(4), which is without question one of **the** provisions of NRS 107.090, requires that a copy of the notice of sale be mailed to "each person described in subsection 3."

When a senior deed of trust is foreclosed, there is no doubt that NRS 107.090(3) requires that a copy of the notice of default be mailed **both** to "[e]ach person who has recorded a request for a copy of the notice" pursuant to NRS 107.090(2) **and** to "[e]ach other person with an interest whose interest or claimed interest is subordinate to the deed of trust." The definition of "person with an interest" in NRS 107.090(1) includes holders of "any right, title or interest in, or lien or charge

10

upon, the real property." This definition includes holders of deeds of trust. NRS 107.090(3)(b) therefore requires that notice be mailed to holders of deeds of trust "subordinate" to "the deed of trust" being foreclosed. NRS 107.090(4) requires that a copy of the notice of sale be mailed to the same persons.

These notice requirements of NRS 107.090(3)(b) apply regardless of whether the holder of the subordinate interest (deed of trust) records a request for a copy of the notice in order to qualify to receive the notice required by NRS 107.090(3)(a). **If notice was required only for those persons who record a request for notice, there would be no reason for NRS 107.090(3)(b) to exist because all such persons would already be covered by NRS 107.090(3)(a)**. Because NRS 107.090(3)(a) and NRS 107.090(3)(b) are connected by the word "and," the statute without question requires that notice be provided **both** to holders of interests who have recorded a request for notice **and** to holders of "subordinate" interests even if they have not recorded a request for notice**.**

NRS 116.31168(1) states that NRS 107.090 is to be applied to an HOA's foreclosure of its lien "**as if** a deed of trust were being foreclosed." (emphasis added) This means that the words "deed of trust" at the end of NRS 107.090(3) need to be read as if the words "association's lien" appeared in their place. The plain intent of NRS 116.311168(1) is that NRS 107.090 be applied to an HOA foreclosure to require that notice be mailed to both holders of interests who have recorded a request for notice **and** holders of interests "subordinate" to the association's lien regardless of whether they have recorded a request for notice. This is exactly the type of notice provision that Wells Fargo claims is required by <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306 (1950), <u>Tulsa Prof'l Collection Servs., Inc. v.Pope</u>, 485 U.S. 478 (1988), and <u>Mennonite Bd. of Missions v. Adams</u>, 462 U.S. 791 (1983).

The Nevada Supreme Court has recognized a general presumption that statutes will be interpreted in compliance with the Constitution. <u>Sereika v. State</u>, 114 Nev. 142, 955 P.2d 175, 180 (1998). The Nevada Supreme Court has stated that "statutes

11

must be construed consistent with the constitution and, where necessary, in a manner supportive of their constitutionality." <u>Foley v. Kennedy</u>, 110 Nev. 1295, 1300, 885 P.2d 583, 586 (1994). Where a statute is susceptible to both a constitutional and an unconstitutional interpretation, the court is obliged to construe the statute so that it does not violate the constitution. <u>Whitehead v. Nevada Commission on Judicial Discipline</u>, 110 Nev. 380, 878 P.2d 913, 919 (1994), citing <u>Sheriff v. Wu</u>, 101 Nev. 687, 708 P.2d 305 (1985).

The Nevada Supreme Court has also recognized that when the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it. <u>City Council of Reno v. Reno Newspapers</u>, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989). Additionally, courts must construe statutes to give meaning to **all of their parts and language**, and courts are to read **each sentence, phrase, and word** to render it meaningful within the context of the purpose of the legislation. <u>Board of County Comm'rs v. CMC of Nevada</u>, 99 Nev. 739, 744, 670 P.2d 102, 105 (1983). A statute should be interpreted to give the terms their plain meaning, **considering the provisions as a whole**, so as to read them in a way that would **not render words or phrases superfluous or make a provision nugatory**. <u>Southern Nevada Homebuilders v. Clark County</u> 121 Nev. 446, 117 P.3d 171 (2005). A statute should be construed so that **no part is rendered meaningless.** <u>Public Employees' Benefits Program v. Las Vegas Metropolitan Police Department</u> 124 Nev. 138, 179 P.3d 542 (2008).

All of these standards are violated by Wells Fargo's interpretation that uses the caption assigned to NRS 116.31168 to limit the provisions of NRS 107.090 that are incorporated by NRS 116.31168(1) even though the language used in the body of the statute incorporates "the provisions" of NRS 107.090 without limit. The same standards are violated by defendant's failure to treat the association's lien "as if a deed of trust were being foreclosed," so that the notice requirement incorporated from NRS 107.090(3)(b) can be understood to require that notice be provided to all

12

persons "with an interest" whose interests are "subordinate" to the "association's lien."

The statutory requirements for the foreclosure procedures under NRS Chapter 116 for an HOA foreclosure and under NRS 107.080 for a bank foreclosure are detailed in the following graph:

| HOA Foreclosure | Statutory Requirement | Bank Foreclosure |
|---|---|---|
| NRS 116.31162(1)(a) | Delinquency by homeowner | NRS 107.080(1) |
| NRS 116.31162(1)(a) | Mail notice of delinquency to homeowner | No statutory requirement but required by terms of deed of trust |
| NRS 116.31162(1)(b) | Execute notice of default and election to sell (NOD) that describes the deficiency in payment | NRS 107.080(2)(b) |
| NRS 116.31162(1)(a) | Record NOD | NRS 107.080(3) |
| NRS 116.31162(2)(b) | Mail NOD by certified or registered mail, return receipt requested to homeowner | NRS 107.080(3) |
| NRS 116.31163 and NRS 116.31168(incorporating requirements of NRS 107.090) | Mail NOD to interested parties who request notice | NRS 107.090(3)(a) |
| NRS 116.31168 (incorporating requirements of NRS 107.090) | Mail NOD to subordinate claim holders | NRS 107.090(3)(b) |
| NRS 116.31162(1)(c) | Failure to pay for 90 days after NOD is recorded and mailed | NRS 107.080(3) |
| NRS 116.311635(1)(a) | Give notice of the time and place of the sale in the manner and for a time not less than that required by law for the sale of real property upon execution/posting in a public place and on property | NRS 107.080(4) |

13

| HOA Foreclosure | Statutory Requirement | Bank Foreclosure |
|---|---|---|
| NRS116.311635(1)(a)(1) | Mail Notice of Sale (NOS) to homeowner | NRS 107.080(4) |
| NRS116.311635(1)(b)(1) and NRS116.311635(1)(b)(3) | Mail NOS to interested parties who request notice | NRS 107.090(4) |
| NRS 116.31168 (incorporating requirements of NRS 107.090) | Mail NOS to subordinate claim holders | NRS 107.090(4) |
| NRS116.311635(1)(b)(3) | Mail NOS to Ombudsman | No statutory requirement |
| NRS 116.311635(2) | Post NOS on property or personally deliver to homeowner | NRS 107.080(4) |

NRS Chapter 116 expressly provides that all persons with an interest, whose interests are subordinate to the super priority lien, are entitled to notice regardless of whether they request notice. The statutory requirements for foreclosure of an HOA lien and trust deed are virtually identical, and the statutes mirror each other.

The notice requirements of NRS 116.31162 through 116.31168, and by incorporation, NRS 107.090, provide holders of "subordinate" deeds of trust, like Wells Fargo in this case, with adequate notice prior to an HOA foreclosure sale. The statutory foreclosure process does not violate due process.

**3.     The extinguishment of Wells Fargo's deed of trust pursuant to NRS Chapter 116 does not violate the takings clause of the Fifth Amendment to the United States Constitution.**

At page 16 of appellant's opening brief, Wells Fargo asserts that "[t]he Nevada Supreme Court's construction of the Statute as extinguishing a first-recorded deed of trust in favor of a homeowners' association's lien to recover several months of assessments is a taking that violates that constitutional protection." The present case, however, does not involve any property being "taken for public use" as required by the Fifth Amendment to the U.S. Constitution.

14

Both the adoption of NRS Chapter 116 by the Nevada legislature in 1991, and the recording of the CC&Rs for the HOA on August 18, 2000 (2 ER 32-85) pre-dated the recording of the deed of trust on May 5, 2006 (2 ER 134-152), the re-recording of the deed of trust on May 24, 2006 (2 ER 153-170) and the assignment of the deed of trust to Wells Fargo on March 7, 2011 (2 ER 172). Wells Fargo was therefore "on notice that by operation of the statute, the [earlier recorded] CC&Rs might entitle the HOA to a super priority lien at some future date which would take priority over a [later recorded] deed of trust." SFR Investments Pool 1, LLC v. U.S. Bank, N.A., 130 Nev., Adv. Op. 75, *22, 334 P.3d 408, 418 (2014), quoting 7912 Limbwood Court Trust v. Wells Fargo Bank, N.A., 979 F. Supp. 2d 1142, 1152 (D. Nev. 2013).

In United States v. Security Industrial Bank, 459 U.S. 10 (1982), the Supreme Court held that the exemptions created by 11 U.S.C. § 522(f)(2) could not have "retrospective application" and invalidate liens acquired before the enactment date of the Bankruptcy Reform Act of 1978. In Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555 (1935), the Supreme Court held that a sub-section added to §75 of the Bankruptcy Act on June 28, 1934 could not be applied to change the mortgagee's rights in mortgages recorded in 1922 and 1924. In the present case, NRS Chapter 116 was enacted and the CC&Rs for the HOA were recorded before Wells Fargo's deed of trust was recorded.

In Armstrong v. United States, 364 U.S. 40 (1960), the United States took ownership of 11 boats that were subject to the petitioners' materialmen's liens under state law and thereby made those liens unenforceable. In this case, the private foreclosure sale by the HOA did not involve a government purchaser, and Wells Fargo's deed of trust was always subordinate to the HOA's super priority lien rights.

At page 19 of appellant's opening brief, Wells Fargo states that a takings analysis is not limited to "outright acquisitions" of property by the government, but that "the government's 'simply impos[ing] a general economic regulation,' which 'in

15

effect transfers the property interest from a private creditor to a private debtor' is also a taking." No such economic regulation was adopted by the government in this case.

**4.    The "commercial reasonableness" requirement in the Uniform Commercial Code does not apply to an HOA foreclosure sale.**

At page 20 of appellant's opening brief, Wells Fargo asserts that "[t]he failure to sell the Property in a commercially reasonable manner voids the sale and constitutes an independent basis for dismissal of Bourne Valley's quiet title action as a matter of law." Wells Fargo identifies no evidence that supports this argument, but simply asserts that "Horse Pointe Avenue Trust obtained title to the Property at the HOA foreclosure sale for the *de minimis* price of $4,145.00."

At page 20 of appellant's opening brief, Wells Fargo  acknowledges the Nevada Supreme Court's holding in Golden v. Tomiyasu, 79 Nev. 503, 387 P.2d 989 (1963), that adopted the following rule laid down in Oller v. Sonoma County Land Title Company, 137 Cal. App. 2d 633, 635, 290 P.2d 880, 882 (1955):

> However, even assuming that the price was inadequate, that fact standing alone would not justify setting aside the trustee's sale. "In California, it is a settled rule that inadequacy of price, however gross, is not a sufficient ground for setting aside a trustee's sale legally made; there must be in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price."

The record on appeal does not contain any evidence of the required "element of fraud, unfairness, or oppression" bringing about the price paid by the Horse Pointe Avenue Trust that Wells Fargo contends in itself constitutes grounds to set aside the sale.

The Nevada Supreme Court concluded its opinion in Golden v. Tomiyasu by noting:

> In virtually all foreclosures the trustor or mortgagor suffers a loss. He has not been able to meet his obligation and loses the property. When the sale is by a trustee, as in the present case, he loses it without an equity of redemption. **If the sale is properly, lawfully and fairly carried out, he cannot unilaterally create a right of redemption in himself.** . . . We regret, as do all courts facing such a situation, that the mortgagor or trustor must lose his property, but **we cannot arbitrarily**

16

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**afford relief under such circumstances as here exist**. (emphasis added)

387 P.2d at 997.

At pages 20 and 21 of appellant's opening brief, Wells Fargo quotes from the opinion in <u>Runkle v. Gaylord</u>, 1 Nev. 123 (1865), but in <u>Golden v. Tomiyasu</u>, the Supreme Court stated that "[b]efore using this language the court had reviewed at length facts indicating collusion and fraud." 387 P.2d at 994. In this case, Well Fargo's only ground for objection to the HOA sale is the price paid by the Horse Pointe Avenue Trust.

In footnote 5 at page 20 of appellant's opening brief, Wells Fargo asserts that because plaintiff/appellee acquired the property from the Horse Pointe Avenue Trust for no consideration, plaintiff/appellee cannot claim bona fide purchaser status. To the contrary, because the Horse Pointe Avenue Trust acquired its title free of Wells Fargo's extinguished deed of trust, plaintiff/appellee has these same rights.

At page 21 of appellant's opening brief, Wells Fargo quotes from <u>Levers v. Rio King Land & Investment Co.</u>, 93 Nev. 95, 98-99, 560 P.2d 917, 920 (1977), that "[a] wide discrepancy between the sale price and the value of the collateral compels close scrutiny into the commercial reasonableness of the sale." In <u>Levers</u>, however, the secured party mailed a letter to the debtor only 8 days before the sale, the secured party and a former employee were the only people who attended the sale, there was no evidence that the sale was publicized in any manner, and the secured party purchased the collateral for $100 at the sale and re-sold the collateral to a third party for $10,000.

Although the Nevada Supreme Court found that the sale in <u>Levers</u> was not commercially reasonable, the Court reversed the district court's judgment setting aside the sale and held that it was enough that the secured party's judgment be reduced by the $10,000 fair market value of the collateral. In the present case, the

17

record on appeal establishes that the HOA complied with every requirement of NRS Chapter 116 to hold a public auction at which a third party, the Horse Pointe Avenue Trust, purchased the property for the high bid of $4,145.00.

In footnote 6 at page 21, Wells Fargo acknowledges that the <u>Levers</u> opinion "addresses a secured party's obligations under NRS 104," but Wells Fargo then asserts that "the principles and rationale for a commercially reasonable sale price are equally applicable here." To the contrary, the requirement in NRS 104.9610(2) that "the method, manner, time, place and other terms" of a secured party's disposition of collateral be "commercially reasonable" exists because NRS Chapter 104 does not include a statutorily defined foreclosure process like that contained in NRS 116.31162 through NRS 116.31168 and, by incorporation, NRS 107.090. NRS 104.9109(4)(k) expressly provides that Article 9 of the Uniform Commercial Code does not apply to "[t]he creation or transfer of an interest in or lien on real property" except for four specific situations identified therein. An HOA lien created and foreclosed under NRS Chapter 116 is not one of the four situations.

In <u>SFR Investments Pool 1, LLC v. U.S. Bank, N.A.</u>, 130 Nev., Adv. Op. 75, 334 P.3d 408, 417 (2014), the Nevada Supreme Court stated:

> **But the choice of foreclosure method for HOA liens is the Legislature's,** and the Nevada Legislature has written NRS Chapter 116 to allow nonjudicial foreclosure of HOA liens, subject to the special notice requirements and protections handcrafted by the Legislature in NRS 116.31162 through NRS 116.31168. (emphasis added)

The Nevada Supreme Court also stated: "If revisions to the foreclosure methods provided for in NRS Chapter 116 are appropriate, **they are for the Legislature to craft, not this court**." <u>Id.</u> (emphasis added) The district court properly rejected Wells Fargo's request that the court judicially impose a "commercial reasonableness" requirement on every HOA foreclosure sale.

At page 23 of appellant's opening brief, Wells Fargo cites decisions from states other than Nevada setting aside sales at purchase prices for less than 20% of the value

18

of the property, but the Nevada Supreme Court has never adopted the view held by these states. As discussed above, Nevada law requires a showing of fraud, unfairness or oppression as accounts for and brings about the inadequacy of price. <u>Long v. Towne</u>, 98 Nev. 11, 639 P.2d 528, 530 (1982); <u>Turner v. Dewco Services, Inc.</u>, 87 Nev. 14, 479 P.2d 462 (1971); <u>Brunzell v. Woodbury</u>, 85 Nev. 29, 449 P.2d 158 (1969); <u>Golden v. Tomiyasu</u>, 79 Nev. 503, 387 P.2d 989 (1963). Wells Fargo made no such showing in this case.

In support of its argument, Wells Fargo requests that the court take judicial notice of an inadmissible zillow.com estimate of value for the property as of May 19, 2015 – a date more than three years after the HOA foreclosure sale. Contrary to the requirements for judicial notice under Rule 201 of the Federal Rules of Evidence, a zillow.com opinion of value is not "a fact that is not subject to reasonable dispute," and it is not a source "whose accuracy cannot reasonably be questioned."

At page 24 of appellant's opening brief, Wells Fargo quotes from the opinion in <u>Will v. Mill Condominium Owners' Association</u>, 176 Vt. 380, 848 A.2d 336 (2004), that "the enforcement mechanisms provided for in [the Uniform Act] must be conducted in good faith as defined in § 1-113, that is, *in a commercially reasonable manner.*" The Supreme Court of Vermont's analysis of Vermont law is not helpful in interpreting Nevada's version of the UCOIA because Vermont law does not include the nonjudicial foreclosure procedure that was "handcrafted" by the Nevada Legislature in NRS 116.31162 through NRS 116.31168. Vermont's version of the UCIOA also does not contain any counterpart to either NRS 116.31166(1) stating that the recitals in an HOA foreclosure deed "are conclusive proof of the matters recited" or NRS 116.31166(2) stating that "[s]uch a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, **and all other persons**." (emphasis added)

The Vermont Supreme Court relied on the "obligation of good faith" contained

19

in Section 1-113 of the UCIOA, but the comment to Section 1-113 does not require that any action taken by an HOA be "commercially" reasonable – the comment only requires observance of two standards: "honesty in fact" and "observance of reasonable standards of fair dealing." Wells Fargo does not explain how the HOA's compliance with every requirement of the "elaborate" foreclosure process "handcrafted" by the Nevada Legislature violates this definition of "good faith."

While it might make sense to make a secured party prove that its "disposition of collateral" was "commercially reasonable" as required by NRS 104.9610(2) when it seeks to recover a deficiency judgment, it makes no sense to impose this obligation on the purchaser at an HOA foreclosure sale. To do so would read NRS 116.31166 out of the statute.

At page 25 of appellant's opening brief, Wells Fargo asserts that "requiring a commercially reasonable sale **at fair market value** is sound public policy." (emphasis added) To the contrary, if every HOA foreclosure sale could be overturned if the high bid does not equal "fair market value" as later determined by a court, no bidders would attend the sales.

In the case of <u>BFP v. Resolution Trust Corporation,</u> 511 U.S. 531, 548-49 (1994), the U.S. Supreme Court explained why the fair market value of a property cannot be used to prove the forced sale value of the property:

> ...the fact that a piece of property is legally subject to forced sale, like any other fact bearing upon the property's use or alienability, necessarily affects its worth. Unlike most other legal restrictions, however, foreclosure has the effect of completely redefining the market in which the property is offered for sale; normal free-market rules of exchange are replaced by the far more restrictive rules governing forced sales. Given this altered reality, and the concomitant inutility of the normal tool for determining what property is worth (fair market value), **the only legitimate evidence of the property's value at the time it is sold is the foreclosure-sale price itself**. (emphasis added)

Although the Supreme Court limited its holding to nonjudicial foreclosure sales held under deeds of trust, the logic in the opinion applies equally well to a nonjudicial

20

foreclosure sale by a homeowners association.

## 5. There is a conclusive presumption that the HOA foreclosure sale was properly conducted.

At page 26 of appellant's opening brief, Wells Fargo asserts that "Bourne Valley did not offer evidence showing that the HOA sale complied with the notice and mailing requirements." To the contrary, the trustee's deed upon sale, recorded on May 29, 2012, attached as Exhibit 2 to plaintiff's motion for summary judgment (2 ER 100-103) contains the recitals required by NRS 116.31166, which recitals are "conclusive proof" that the HOA served all notices required for the foreclosure of its superpriority lien.

The detailed and comprehensive statutory requirements for a foreclosure sale are indicative of a public policy which favors a final and conclusive foreclosure sale as to the purchaser. See 6 Angels, Inc. v. Stuart-Wright Mortgage, Inc., 85 Cal. App. 4th 1279, 102 Cal. Rptr. 2d 711 (2011); McNeill Family Trust v. Centura Bank, 60 P.3d 1277 (Wyo. 2033); In re Suchy, 786 F.2d 900 (9th Cir. 1985); and Miller & Starr, California Real Property 3d §10:210. In the case of SFR Investments Pool 1, LLC v. U.S. Bank, N.A., 130 Nev., Adv. Op. 75, 334 P.3d 408 (2014), the court described the non-judicial foreclosure provisions of NRS Chapter 116 as "elaborate," and therefore supported the public policy favoring the finality of a foreclosure sale.

Additionally, there is a common law presumption that a foreclosure sale was conducted validly. Fontenot v. Wells Fargo Bank, 198 Cal. App. 4th 256, 129 Cal. Rptr. 3d 467 (2011); Moeller v. Lien 25 Cal. App. 4th 822, 30 Cal. Rptr. 2d 777 (1994); Burson v. Capps, 440 Md. 328, 102 A.3d 353 (2014); Timm v. Dewsnup 86 P.3d 699 (Utah 2003); Deposit Insurance Bridge Bank, N.A. Dallas v. McQueen, 804 S.W. 2d 264 (Tex. App. 1991); Myles v. Cox, 217 So. 2d 31 (Miss. 1968); American Bank and Trust Co. v. Price, 688 So.2d 536 (La. App. 1996); Meeker v. Eufaula Bank & Trust, 208 Ga. App. 702, 431 S.E. 2d 475 (Ga. App 1993).

Under Nevada law, the recitals in the deed are sufficient and conclusive proof that a default occurred and that the required notices were mailed by the HOA.

The controlling statute, NRS 116.31166, provides:

**Foreclosure of liens: Effect of recitals in deed; purchaser not responsible for proper application of purchase money; title vested in purchaser without equity or right of redemption**.

1. **The recitals in a deed** made pursuant to NRS 116.31164 of:
(a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
(b) The elapsing of the 90 days; and
(c) The giving of notice of sale,
are **conclusive proof of the matters recited**.

2. **Such a deed containing those recitals is conclusive against** the unit's former owner, his or her heirs and assigns, **and all other persons**. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.

3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption. (emphasis added)

NRS 47.240(6) also provides that conclusive presumptions include "[a]ny other presumption which, by statute, is expressly made conclusive." Because NRS 116.31166 contains such an expressly conclusive presumption, the recitals in the foreclosure deed are "conclusive proof" that Wells Fargo was served with copies of the required notices for the foreclosure sale. Wells Fargo has not denied that the HOA's foreclosure agent mailed both of the required notices to Wells Fargo.

In the case of <u>Pro-Max Corp. v. Feenstra</u>, 117 Nev. 90, 16 P.3d 1074 (2001), the district court refused to apply the conclusive presumption contained in NRS 106.240 because "[t]he district court determined that the legislature intended for the statute to protect bona fide purchasers." The Supreme Court reversed the district court's judgment that the statute only protected bona fide purchasers and stated:

We conclude that the statute is clear and unambiguous. That being the case, no further interpretation is required or permissible. Under the plain language of the statute, the deeds of trust are conclusively presumed to have been satisfied and the notes discharged. This

22

1
2
conclusive presumption is plain, clear and unambiguous. **No limitation of the statute's terms to bona fide purchasers can be read into the statute.** (emphasis added)

3
117 Nev. at 95, 16 P.3d at 1078-79.

4
5
6
7
At page 27 of appellant's opening brief, Wells Fargo does not cite evidence disproving the truth of the recitals in the foreclosure deed, but instead characterizes the recitals as "legal conclusions" that are not enforceable according to Alaska and Washington case law.

8
9
10
11
12
13
14
15
16
17
In <u>Rosenberg v. Smidt</u>, 727 P.2d 778 (Alaska 1986), however, the Alaska statute was not based on the UCIOA, and AS 34.20.080(c) required specific recitals of date, book and page, time and place of publication, and time, place and manner of sale. NRS 116.31166(1), on the other hand, only requires recitals of (1) default, (2) the mailing of the notice of delinquent assessment, (3) the recording of the notice of default and election to sell, (4) the elapsing of the 90 days, and (5) the giving of the notice of sale. The foreclosure deed in this case contains each of these factual statements. The effect of the recital contained in AS 34.20.090(c) is also materially different from the "conclusive" language in NRS 116.31166 (1) and (2).

18
19
20
21
22
23
In <u>Albice v. Premier Mortgage Services of Washington, Inc.</u>, 157 Wash. App. 912, 239 P.3d 1148 (2010), <u>aff'd</u>, 174 Wash. 2d 560, 276 P.3d 1277 (2012), both the court of appeals and the Washington Supreme Court agreed that the buyer in <u>Albice</u> was not a bona fide purchaser entitled to the "conclusive" presumption provided by RCW 61.24.040(7). NRS 116.31166 does not limit its protection to bona fide purchasers, and it is not the court's role to add such a limitation to the statute.

24
25
26
27
Furthermore, any error in the mailing of notices by the HOA foreclosure agent does not affect either the validity of the sale or plaintiff's title to the property. Instead, if a defect occurred in the foreclosure process, Wells Fargo's remedy is to recover damages from the HOA or its foreclosure agent.

28
In the case of <u>Moeller v. Lien</u>, 25 Cal. App. 4th 822, 30 Cal. Rptr. 2d 777

23

(1994), the respondent allowed a trustee's sale to go forward even though it had available cash deposits to pay off the loan. Id. at 828. The trial court set aside the sale because "[t]he value of the property was four times the amount of the debt/sales price." Id. at 829. The Court of Appeals reversed the trial court's order and stated:

> Thus **as a general rule, a trustor has no right to set aside a trustee's deed as against a bona fide purchaser for value by attacking the validity of the sale.** (Homestead Savings v. Damiento, supra, 230 Cal. App. 3d at p. 436.) The conclusive presumption precludes an attack by the trustor on a trustee's sale to a bona fide purchaser **even though there may have been a failure to comply with some required procedure which deprived the trustor of his right of reinstatement or redemption.** (4 Miller & Starr, supra, § 9:141, p. 463; cf. Homestead v. Damiento, supra, 230 Cal. App. 3d at p. 436.) The conclusive presumption precludes an attack by the trustor on the trustee's sale to a bona fide purchaser even where the trustee wrongfully rejected a proper tender of reinstatement by the trustor**. Where the trustor is precluded from suing to set aside the foreclosure sale, the trustor may recover damages from the trustee**. (Munger v. Moore (1970) 11 Cal. App. 3d 1, 9, 11 [89 Cal. Rptr. 323].)

> Id. at 831-832. (emphasis added)

In the case of Firato v. Tuttle, 48 Cal.2d 136, 308 P.2d 333 (1957), the California Supreme Court stated:

> Instruments which are wholly void cannot ordinarily provide the foundation for good title even in the hands of an innocent purchaser, as where a deed has been forged or has not been delivered. Trout v. Taylor, 220 Cal. 652, 656, 32 P.2d 968. It does not appear, however, that section 870 of the Civil Code should necessarily make the unauthorized reconveyance by a trustee void as to such a purchaser. Section 2243 of that code states: 'Everyone to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration.' (Emphasis added.) This section was also enacted in 1872 and has been treated as correlative to section 870. Chapman v. Hughes, 134 Cal. 641, 657, 58 P. 298, 60 P. 974, 66 P. 982.

> **The rule indicated by section 2243, which would protect innocent purchasers for value who take without any notice that the conveyance by the trustee was unauthorized, is in accord with the rule protecting such purchasers who acquire their interests from one who holds a general power and who makes a conveyance for an unauthorized purpose**, see Alcorn v. Buschke, 133 Cal. 655, 66 P. 15, and cases cited, or from a trustee under a secret trust. Ricks v. Reed, 19 Cal. 551; Rafftery v. Kirkpatrick, 29 Cal.App.2d 503, 508, 85 P.2d 147; Civil Code, s 869. The protection of such purchasers is consistent 'with the purpose of the registry laws, with the settled principles of equity, and

24

with the convenient transaction of business.' Williams v. Jackson, 107 U.S. 478, 484, 2 S.Ct. 814, 819, 27 L.Ed. 529. **It also finds support in the better reasoned cases from other jurisdictions which have dealt with similar problems upon general equitable principles and in the absence of statutory provisions.** Simpson v. Stern, 63 App.D.C. 161, 70 F.2d 765, certiorari denied 292 U.S. 649, 54 S.Ct. 859, 78 L.Ed. 1499; Williams v. Jackson, supra, 107 U.S. 478, 2 S.Ct. 814; Town of Carbon Hill v. Marks204 Ala. 622, 86 So. 903; Lennartz v. Quilty, 191 Ill. 174, 60 N.E. 913; Millick v. O'Malley, 47 Idaho 106, 273 P. 947; Day v. Brenton, 102 Iowa 482, 71 N.W. 538; Willamette Collection & Credit Service v. Gray, 157 Or. 79, 70 P.2d 39; Locke v. Andrasko, 178 Wash. 145, 34 P.2d 444.

As section 2243 of the Civil Code must be read with section 870 of the same code and because of the obvious desirability of protecting innocent purchasers for value who rely in good faith upon recorded instruments under the circumstances presented here, we conclude that plaintiffs were required to plead that respondents were not such innocent purchasers for value in order to state a cause of action against them. In the absence of such allegations, the trial court properly sustained respondents' demurrers to plaintiffs' first amended complaint. (emphasis added)

The bona fide purchaser doctrine protects a purchaser's title against competing legal or equitable claims of which the purchaser had no notice at the time of the conveyance. 25 Corp. v. Eisenman Chemical Co., 101 Nev. 664, 709 P.2d 164, 172 (1985); Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246, 247 (1979).

As far back as 1880, the Supreme Court, in the case of Moresi v. Swift, 15 Nev. 215 (1880), stated:

The rule that a man who advances money bona fide and without notice, will be protected in equity, applies equally to real estate, chattels, and personal estate.

Wells Fargo did not allege or prove that it did not have actual notice of either the notice of default or the notice of sale mailed by the HOA's foreclosure agent. Wells Fargo also did not allege or prove that it took any action to advise potential bidders at the public auction held on May 7, 2012 that Wells Fargo had any basis to object to the HOA foreclosure sale or the extinguishment of its subordinate deed of trust. Wells Fargo instead allowed the HOA to complete the foreclosure sale and convey the property to a bona fide purchaser free of Wells Fargo's extinguished deed of trust.

25

# V. <u>CONCLUSION</u>

By reason of the foregoing, plaintiff respectfully submits that this Court should affirm the order by the district court granting plaintiff's motion for summary judgment.

DATED this 24th day of July, 2015.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By:  / s / Michael F. Bohn, Esq. /
Michael F. Bohn, Esq.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Attorney for plaintiff/appellant

26

## VI.  **CERTIFICATE OF COMPLIANCE**

Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,751 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Word Perfect X6 14 point Times New Roman.

DATED this 24th day of July, 2015.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By:  / s / Michael F. Bohn, Esq. /
Michael F. Bohn, Esq.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Attorney for plaintiff/appellee

## VII. **STATEMENT OF RELATED CASES**

To the best of plaintiff/appellee's knowledge and information, there are no known related cases pending in this court.

DATED this 24th day of July, 2015.

LAW OFFICES OF
MICHAEL F. BOHN, ESQ., LTD.


By:  / s / Michael F. Bohn, Esq. /
Michael F. Bohn, Esq.
376 East Warm Springs Road, Ste. 140
Las Vegas, Nevada 89119
Attorney for plaintiff/appellee

27

## VIII.  **CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of The Law Offices of Michael F. Bohn, Esq., Ltd., and that I electronically filed the foregoing APPELLEE'S ANSWERING BRIEF with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the Appellate CM/ECF system on July 24, 2015.

 /s/ Marc Sameroff/
An Employee of the LAW OFFICES OF MICHAEL F. BOHN, ESQ., LTD.

28