No. 15-15233
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

_____

### BOURNE VALLEY COURT TRUST, Appellee,

### v.

### WELLS FARGO BANK, N.A., Appellant.

_____

### On Appeal from the U.S. District Court for Nevada
### 2:13-cv-00649-PMP-NJK, the Honorable Philip M. Pro

_____

### Petition for Rehearing or Rehearing En Banc

_____

Michael F. Bohn, Esq.
Nevada Bar No. 1641
LAW OFFICES OF MICHAEL
F. BOHN, ESQ., LTD.
376 E. Warm Springs Rd., Ste. 140
Las Vegas, NV 89119-4262
mbohn@bohnlawfirm.com
Telephone: (702) 642-3113
Facsimile: (702) 642-9766

Jacqueline A. Gilbert, Esq.
Nevada Bar No. 10593
Jesse N. Panoff, Esq.
Nevada Bar No. 10951
KIM GILBERT EBRON
7625 Dean Martin Dr., Ste. 110
Las Vegas, NV 89139-5974
jackie@kgelegal.com
jesse@kgelegal.com
Telephone: (702) 485-3300
Facsimile: (702) 485-3301

*Attorneys for Appellee Bourne Valley Court Trust*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... III

I.      FED. R. APP. P. 35 STATEMENT ...................................................1

II.     BACKGROUND...............................................................................1

III.    *BOURNE VALLEY*'S STATE ACTION ANALYSIS CONFLICTS WITH
        UNITED STATES SUPREME COURT PRECEDENT..................................2

IV.     *BOURNE VALLEY* INVOLVES A QUESTION OF EXCEPTIONAL
        IMPORTANCE BECAUSE IT CREATES A CIRCUIT SPLIT ......................8

V.      *BOURNE VALLEY* IGNORED THE NEVADA SUPREME COURT'S
        CONSTRUCTION OF 116.3116'S "NOTICE SCHEME" ........................9

VI.     *BOURNE VALLEY* CONFRONTED, INSTEAD OF AVOIDED, THE
        CONSTITUTION....................................................................12

VII.    *BOURNE VALLEY*'S CONSTITUTIONAL ANALYSIS WAS BASED ON
        SPECULATION & HYPOTHETICALS .................................................14

VIII.   CONCLUSION..............................................................................16

CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULES 35-4 AND
        40-1 FOR 15-15233 .........................................................17

# TABLE OF AUTHORITIES

## CASES

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
  526 U.S. 40 (1999)........................................................................4

*Apao v. Bank of N.Y.*,
  324 F.3d 1091(9th Cir. 2003) .......................................................6

*Ashwander v. Tenn. Valley Auth.*,
   297 U.S. 288 (1936) ...................................................................12

*Bi-Metallic Inv. Co. v. State Bd. of Equalization*,
  239 U.S. 441 (1915)......................................................................7

*Bourne Valley Ct. Trust v. Wells Fargo Bank, N.A.*,
  No. 15–15233, ___ F.3d ____, 2016 WL 4254983 (9th Cir.
  Aug. 12, 2016). ..................................................................... passim

*Cal. Teachers Ass'n v. State Bd. of Educ.*,
  271 F.3d 1141 (9th Cir. 2001) ......................................................9

*Charmicor v. Deaner*,
  572 F.2d 694 (9th Cir. 1978) ........................................................6

*Diaz v. Ferne*,
  84 P.3d 664 (Nev. 2004)...............................................................7

*Edmonson v. Leesville Concrete Co., Inc.*,
  500 U.S. 614 (1991)......................................................................5

*Flagg Bros., Inc. v. Brooks*,
  436 U.S. 149 (1978)......................................................................4

*Fuentes v. Shevin*,
  407 U.S. 67 (1972)........................................................................3

*Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.*,
  349 F.3d 1169 (9th Cir. 2003). .....................................................7

*Halverson v. Skagit Cnty.*,
   42 F.3d 1257 (9th Cir. 1994) ........................................................7

*Lugar v. Edmondson Oil Co., Inc.*,
    457 U.S. 922 (1982)............................................................................ passim

*O'Brien v. Skinner*,
    414 U.S. 524 (1974)............................................................................ 9, 10

*Rendell-Baker v. Kohn*,
    457 U.S. 830 (1982)............................................................................4, 5

*Samson v. City of Bainbridge Island*,
    683 F.3d 1051 (9th Cir. 2012) ........................................................7

*SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*,
    334 P.3d 408 (Nev. 2014)................................................................ 10, 14

*Small Engine Shop, Inc. v. Cascio*,
    878 F.2d 883 (5th Cir. 1989). ......................................................... 8, 9, 14

*Sniadach v. Family Fin. Corp. of Bay View*,
    395 U.S. 337 (1969)............................................................................3

*Tulsa Prof'l Collection Services, Inc. v. Pope*,
    485 U.S. 478 (1988)............................................................................4

*United States v. Kaluna*,
    192 F.3d 1188 (9th Cir. 1999) ........................................................9

*United States v. Lovett*,
    328 U.S. 303 (1946)............................................................................13

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
    455 U.S. 489 (1982)............................................................................9

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)............................................................................ 14, 15

*Zambrano v. I.N.S.*,
    282 F.3d 1145 (9th Cir. 2002) ........................................................ 12, 13

## STATUTES

Nev. Rev. Stat. § 107.090 ...................................................... 10, 11, 12, 13

Nev. Rev. Stat. § 111.315 .......................................................................15

Nev. Rev. Stat. § 111.320 ........................................................................15

Nev. Rev. Stat. § 111.325 ........................................................................15

Nev. Rev. Stat. § 116.31163 ....................................................... 11, 12, 13

Nev. Rev. Stat. § 116.31165 ....................................................... 11, 12, 13

Nev. Rev. Stat. § 116.31168(1)................................................................10

## **RULES**

FRAP 35(b)(1)(A) ......................................................................................1

FRAP 35(b)(1)(B). .....................................................................................1

## I. FED. R. APP. P. 35 STATEMENT

In *Bourne Valley*, a divided panel determined that the "notice scheme" in Nevada's HOA ("association") non-judicial foreclosure law was facially unconstitutional. *Bourne Valley Ct. Trust v. Wells Fargo Bank, N.A.*, No. 15–15233, ___ F.3d ____, 2016 WL 4254983, at *5 (9th Cir. Aug. 12, 2016). Panel or *en banc* rehearing is appropriate because *Bourne Valley*'s state action analysis conflicts with several United States Supreme Court decisions, such as *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922 (1982). FRAP 35(b)(1)(A). Additionally, *Bourne Valley* involves a question of exceptional importance because it creates a split with the Fifth Circuit. FRAP 35(b)(1)(B).

## II. BACKGROUND

This case involves a house in Las Vegas, Nevada that was purchased in 2001 with a $174,000.00 loan. In 2011 the note and deed of trust were assigned to Wells Fargo. The house's original owner stopped paying association dues, causing the Association to foreclose. Bourne Valley bought the house at the Association's foreclosure sale, and sued Wells Fargo and the former homeowner for quiet title in state court. Wells Fargo removed to federal court, where summary judgment was entered for Bourne Valley. Wells Fargo appealed, and a divided panel of this Court reversed.

/ / /

1

## III.    *BOURNE VALLEY'S* STATE ACTION ANALYSIS CONFLICTS WITH UNITED STATES SUPREME COURT PRECEDENT

*Bourne Valley*'s state action analysis misapplied Supreme Court precedent, contravened the Legislative Acts Doctrine, and relied on a factual impossibility. **First**, in order for due process to apply there must be state action. The majority conceded this point, acknowledging that state action "requires *both*": (i) an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State" *and* (ii) "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Bourne Valley*, 2016 WL 4254983, at \*5 (internal citation omitted). When the Supreme Court articulated these elements, it emphasized that they "are not the same." *Lugar*, 457 U.S. at 937. Indeed, the Court placed special emphasis on the second element, the state actor requirement; it was imperative that the party who caused the deprivation "must be a person who may fairly be said to be a state actor." *Id.* This element was important because "without a limit such as this, private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Id.* Thus, if a Court does not establish the second element, then "private parties could face constitutional litigation whenever" they use or rely on a state statute. *Id.*

2

Here, the majority did not establish the second element. *Bourne Valley*, 2016 WL 4254983, at \*5. Instead, it determined that the enactment of NRS 116.3116 was "state action," which "unconstitutionally degraded [Wells Fargo's] interest in the Property." *Id.* These determinations, however, are only related to state action's first element (i.e. whether a deprivation was caused by the exercise of a right or privilege created by State law). *Bourne Valley* ***did not identify the "person who may fairly be said to be a state actor."*** In failing to do so, the majority misapplied Supreme Court precedent because it found state action even though it did not establish state action's second element.

*Bourne Valley*'s dissent reviewed how the majority did not establish state action's second element. *Id.* at \*6-8 (Wallace, J., dissenting). Particularly, the majority disregarded "the common thread" that ran throughout the Supreme Court's cases: "Each involved a government actor taking some official action." *Id.* at 7. And, the action was not only "official," but it was also "overt." *Id.* at 6-7, 11. *Fuentes* involved a court clerk who issued a writ of replevin that authorized a sheriff to seize property. *Fuentes v. Shevin*, 407 U.S. 67, 70-71 (1972). In *Sniadach*, a clerk of the court issued a summons that allowed a creditor to garnish wages. *Sniadach v. Family Fin. Corp. of Bay View*, 395 U.S. 337, 338–40 (1969). *Lugar* dealt with a sheriff who sequestered property when he executed a creditor's petition for a writ of prejudgment attachment. *Lugar*, 457 U.S. at 924-25. The dissent's synthesis of these

3

cases—its articulation of their "common thread"—mirrors how the Supreme Court summarized these decisions. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999); *Tulsa Prof'l Collection Services, Inc. v. Pope*, 485 U.S. 478, 486 (1988); *Lugar*, 457 U.S. at 933; *Rendell-Baker v. Kohn*, 457 U.S. 830, 838 n.6 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 157 (1978). This country's highest court explained that, in the aforementioned cases, the state law procedures that a private litigant had used violated due process but "***necessary to that conclusion is the holding that private use of the challenged state procedures with the help of state officials constitutes state action*** for purposes of the Fourteenth Amendment." *Lugar*, 457 U.S. at 933 (emphasis added). If a government actor does not provide overt official involvement, then there is no state action. *Id.*

Importantly, the absence of overt official involvement is why the Supreme Court refused to find a due process violation in *Flagg Bros. Rendell-Baker*, 457 U.S. at 838 n.6; *Flagg Bros.*, 436 U.S. at 157. This prerequisite to state action—which *Bourne Valley*'s majority tacitly admitted is missing from the instant case—was explicitly addressed by *Flagg Bros.*, the "total absence of overt official involvement plainly distinguishes this case from earlier decisions . . . ." *Flagg Bros.*, 436 U.S. at 157. Here, "the total absence of overt official involvement" means that there is no state action. Similarly, the Supreme Court reconciled *Lugar* with *Flagg Bros.* by stressing that "the involvement of the sheriff [in *Lugar*] distinguished the case from

*Flagg Brothers*." *Rendell-Baker*, 457 U.S. at 838 n.6. This is precisely the "common thread" that *Bourne Valley*'s dissent held on to, but the majority cut loose. Again, the "common thread" is a government actor provided overt official involvement.

The majority claimed that the "common thread" is inapplicable to *Bourne Valley* because there was no "pre-existing contractual relationship" between the Association and Wells Fargo. *Bourne Valley*, 2016 WL 4254983, at *5. But the Supreme Court has extended the "common thread" to cases where there is no "pre-existing contractual relationship," thereby refuting the majority's contention. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 620-24 (1991). State action requires a government actor's overt official involvement, even in cases that lack a "pre-existing contractual relationship." *Id.* For example, the Supreme Court in *Edmonson* determined that a private litigant's use of peremptory challenges involved state action because "a private party could not exercise its peremptory challenges absent the overt, significant assistance of the court." *Id.* at 624. In reaching this conclusion, *Edmonson* noted that "in the case before us, the parties do not act pursuant to any contractual relation with the government." *Id.* at 627. The extent to which a contractual relation did or did not exist was inapposite; what mattered in *Edmonson*—as it did in the aforementioned cases that *Bourne Valley*'s dissent synthesized—was that there was "overt, significant assistance of" an official. *Id.* at 624. The majority's discussion about "pre-existing contractual relationships" is

5

incompatible with Supreme Court cases because state action's second element does not hinge on whether there was a "pre-existing contractual relationship"; instead, it turns on a government actor's "overt official involvement." *Bourne Valley*, 2016 WL 4254983, at *6-8, 11. Ultimately, the majority misapplied Supreme Court precedent because it found state action even though it did not, and could not, establish state action's second element (i.e. the person who caused the deprivation "may fairly be said to be a state actor."). As a result, "private parties could face constitutional litigation whenever they seek to rely on some state rule governing their interactions with the community surrounding them." *Lugar*, 457 U.S. at 937.[1]

––––––––––––––––––––

[1] Until *Bourne Valley*, the Ninth Circuit—within the private foreclosure context—followed the Supreme Court's **_two_** element state action test. In *Charmicor* and *Apao*, this Court refused to find state action because the second element was not established. *Apao v. Bank of N.Y.*, 324 F.3d 1091, 1095 (9th Cir. 2003). Yet, *Bourne Valley* incorrectly contended that there was no state action in *Charmicor* because the parties had a preexisting contractual relationship, and the power of sale was contractual. This is erroneous; "in *Charmicor*, we rejected a due process challenge to Nevada's non-judicial foreclosure statute because there was insufficient state involvement to attribute the foreclosure to the state itself." *Id. Charmicor* refused to find state action because there was no "overt official involvement." *Id.*; *Charmicor v. Deaner*, 572 F.2d 694, 696 (9th Cir. 1978). Moreover, *Charmicor*—which construed Nevada's non-judicial foreclosure statutes for banks—unambiguously stated that "the **_Nevada statute confers_** a power of sale upon the trustee." *Charmicor*, 572 F.2d at 695 (emphasis added). Thus, *Bourne Valley*'s assertion that *Charmicor* involved a contractually conferred power of sale is wrong. Besides, *Charmicor* determined that "the statutory source of the Nevada power of sale" did not establish state action. *Id.* at 695-96. *Bourne Valley* reached the opposite conclusion for associations; the majority did not explain why a statutorily conferred power of sale for associations triggered state action, but did not do the same for banks. Lastly, the majority asserted that *Charmicor* is distinguishable because it concerned a private

**Second**, *Bourne Valley*'s determination that "the enactment of the Statute unconstitutionally degraded [Wells Fargo's] interest in the Property" contravened the Legislative Acts Doctrine. *Bourne Valley*, 2016 WL 4254983, at *5. Under that doctrine, "when the action is purely legislative, the statute satisfies due process if the enacting body provides public notice and open hearings." *Gallo v. U.S. Dist. Ct. for the Dist. of Ariz.*, 349 F.3d 1169, 1181 (9th Cir. 2003). If a law's enactment causes a deprivation of property, then due process "'is satisfied when the legislative body performs its responsibilities in the normal manner prescribed by law.'" *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1262 (9th Cir. 1994) (internal citation omitted); *Samson v. City of Bainbridge Island*, 683 F.3d 1051, 1060 (9th Cir. 2012). Here, when the legislature enacted 116.3116 it provided public notice and hearings; it performed its responsibilities "'in the normal manner prescribed by law.'" *Id.* Consequently, 116.3116 satisfies due process. *Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445 (1915). The majority's conclusion to the contrary contravened the Legislative Acts Doctrine.

---

creditor enforcing its contractual rights. But in *Bourne Valley* the Association is a private creditor that enforced its rights pursuant to the CC&Rs, which is a contract between the Association and unit owner, running with the land. *Diaz v. Ferne*, 84 P.3d 664, 665-66 (Nev. 2004) (CC&Rs construed as contracts). Either way, *Bourne Valley* misapplied *Charmicor*.

**Third**, the majority's determination that "the enactment of the Statute [in 1991] unconstitutionally degraded [Wells Fargo's] interest in the Property" relied on a factual impossibility. *Bourne Valley*, 2016 WL 4254983, at \*5. It is factually impossible for 116.3116's enactment to have deprived Wells Fargo of its "interest in the Property" because this interest did not exist in 1991; it was not until 2006— nearly fifteen years after the law's enactment—that Wells Fargo obtained its "interest in the Property." *Id.* at \*7 (Wallace, J., dissenting). 116.3116 was enacted in 1991. Nearly fifteen years later, Wells Fargo's "mortgage interest was created . . . ." *Id.* Thus, it is factually impossible for a law's enactment in 1991 to have "unconstitutionally degraded" an interest that did not exist in 1991. *Id.* As the dissent noted, "it is wrong as a matter of timing." *Id.* All told, the majority's state action analysis relied on a factual impossibility, and conflicts with Supreme Court cases.

## IV.  *BOURNE VALLEY* INVOLVES A QUESTION OF EXCEPTIONAL IMPORTANCE BECAUSE IT CREATES A CIRCUIT SPLIT

The majority struck down 116.3116's "notice scheme" by relying on *Small Engine Shop, Inc. v. Cascio*, 878 F.2d 883 (5th Cir. 1989). According to the majority, *Small Engine* "concluded that an 'opt-in' notice clause contained in Louisiana's real property foreclosure statute could not satisfy" due process. *Bourne Valley*, 2016 WL 4254983, at \*4. This is wrong; the Fifth Circuit invoked the Constitutional Avoidance Doctrine to construe Louisiana's law in a way that saved it from

infirmity. *Small Engine*, 878 F.2d at 890. *Small Engine* "believe[d] that the statute simply supplements Louisiana's preexisting constructive notice scheme." *Id. Small Engine* stressed that "because our approach avoids finding constitutional defects in the statute, prudence dictates our conclusion." *Id.* Contrastingly, *Bourne Valley* found "constitutional defects," thereby creating a circuit split; the majority disregarded the Constitutional Avoidance Doctrine. *United States v. Kaluna*, 192 F.3d 1188, 1197 (9th Cir. 1999). In the end, *Bourne Valley* involves a question of exceptional importance because it creates a circuit split. What is constitutional in the Fifth Circuit is unconstitutional in the Ninth.

## V. *Bourne Valley* Ignored the Nevada Supreme Court's Construction of 116.3116's "Notice Scheme"

If a state law is challenged as being facially unconstitutional, then "a federal court must, of course, consider any limiting construction that a state court . . . has proffered." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 n.5 (1982). After all, "it is solely within the province of the state courts to authoritatively construe state legislation." *Cal. Teachers Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1146 (9th Cir. 2001). These principles are so important that the Supreme Court has reminded courts that "it is not our function to construe a state statute contrary to the construction given it by the highest court of a State." *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974). *Bourne Valley* ignored these principles.

For starters, in 2014 Nevada's Supreme Court interpreted 116.3116's "notice scheme" in a way that provided *Bourne Valley* with a "limiting construction." In *SFR Investments Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408 (Nev. 2014), all seven Nevada justices construed 116.3116 *et seq.* as requiring notice to junior lienholders like Wells Fargo. *Id.* at 411, 418, 422. Such a construction was, in part, based on 116.31168(1)'s incorporation of 107.090. The majority observed that "'[t]he provisions of NRS 107.090,' governing notice to junior lienholders and others in deed-of-trust foreclosure sales, 'apply to the foreclosure of an association's lien as if a deed of trust were being foreclosed.'" *Id.* at 411. Incorporation of 107.090 prompted the *dissent* to remark, "[a]s the majority points out, by incorporating certain notice provisions from Chapter 107, Chapter 116 appears to mandate that the association mail the notice of default and notice of sale to the first security holders who have recorded their interest when the association is foreclosing on its lien." *Id.* at 422 (Gibbons, C.J., dissenting). So, all seven justices determined that incorporation of 107.090 required notice to junior lienholders, such as Wells Fargo. *Bourne Valley*, however, rejected this construction, opining that it would "render the express notice provisions of Chapter 116 entirely superfluous." *Bourne Valley*, 2016 WL 4254983, at *4. In doing so, the majority interpreted Nevada law in a way that is contrary "to the construction given it by" Nevada's Supreme Court. *O'Brien*, 414 U.S. at 531. This is impermissible because "it is not [*Bourne Valley*'s] function to

construe a state statute contrary to the construction given it by the highest court of a State." *Id.*

Furthermore, the majority misunderstood the interplay between 107.090, 116.31163, and 116.31165. On the one hand, 107.090(3) and 107.090(4) focus on junior lienholders; these provisions require notice to junior lienholders. On the other hand, 116.31163 and 116.31165 require notice to all holders of a recorded interest at the time the CC&Rs were recorded ("has notified"),[2] to any other interested party who has otherwise notified the association of its interest, and allow any holder of a recorded security interest to formally request notice. This broader focus expands the number of entities who receive notice. For instance, due process, if it applies, would not necessarily require notice to a senior lienholder whose interest was unaffected. Consider the real estate taxing authority alluded to in 116.3116(2)(c). Under 116.3116(2)(c), "liens for real estate taxes" are senior to an association lien. Yet, under 116.31163 and 116.311635, the real estate taxing authority can request notice,

---

[2] Pursuant to Nevada's recording statutes, a person is on notice of all documents recorded that are prior to her interest – for example, anything recorded prior to the CC&Rs, but not of those documents recorded after her interest. NRS 111.320 ("Every such conveyance or instrument of writing, acknowledged or proved and certified, and recorded in the manner prescribed in this chapter or in NRS 105.010 to 105.080, inclusive, must from the time of filing the same with the Secretary of State or recorder for record, impart notice to all persons of the contents thereof; and subsequent purchasers and mortgagees shall be deemed to purchase and take with notice.").

even if it has not recorded a lien against the property at that time, and would receive notice if it had mailed a notice of lien to the association. And, as was the case in *Bourne Valley*, the deed of trust may name Mortgage Electronic Registration Systems, Inc. ("MERS") as the beneficiary. ER 135. Thus, the holder of the recorded security instrument may be transferred any number of times without changing the named beneficiary, and the servicer of the loan may want notice as the holder but not the recorded holder. Both 116.31163 and 116.31165 allow these "shadow owners" to receive notice—where they might not otherwise be known to an association—to add onto the required notices. *Bourne Valley*'s interpretation of 107.090, 116.31163, and 116.31165 did not contemplate such construction. At bottom, *Bourne Valley* ignored the Nevada Supreme Court's interpretation of 116.3116's "notice scheme."

## VI.  *BOURNE VALLEY* CONFRONTED, INSTEAD OF AVOIDED, THE CONSTITUTION

*Bourne Valley*'s construction of 116.3116's "notice scheme" deviated from two principles: (i) courts refrain from anticipating questions of constitutional law, *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 346 (1936) (Brandeis, J., concurring), and (ii) "if there is a constitutional way to interpret a statute, we are obligated to adopt it." *Zambrano v. I.N.S.*, 282 F.3d 1145, 1153 (9th Cir. 2002). These principles promote the Constitutional Avoidance Doctrine; as Justice

12

Frankfurter stated, "[t]he most fundamental principle of constitutional adjudication is not to face constitutional questions but to avoid them, if at all possible." *United States v. Lovett*, 328 U.S. 303, 320 (1946) (Frankfurter, J., concurring). Here, the majority went out of its way to adopt an unconstitutional reading of the "notice scheme," a reading that anticipated constitutional questions. Rather than avoid the Constitution, the majority ran right into it with Wells Fargo not too far behind.

In contrast, the dissent—in keeping with the Constitutional Avoidance Doctrine and the two previously mentioned principles—read 116.31163, 116.31165, 116.31168(1), and 107.090 constitutionally. *Bourne Valley*, 2016 WL 4254983, at *8-10 (Wallace, J., dissenting). Consequently, because there was "a constitutional way to interpret" these laws, *Bourne Valley* was "obligated to adopt" this reading. *Zambrano*, 282 F.3d at 1153. That the majority refused to do so is not surprising, least of all when it called Nevada's law "peculiar," and an "opt-in" notice scheme. *Bourne Valley*, 2016 WL 4254983, at *3, 4. Once again, the majority ignored how Nevada's Supreme Court construed 116.3116's "notice scheme."

Specifically, Nevada's Supreme Court did not describe the "notice scheme" as being "peculiar." And, Nevada's Supreme Court did not determine that 116's notice provisions were "opt-in," any more than the Fifth Circuit did with Louisiana's law in *Small Engine*. To the contrary, Nevada's highest court described these statutes as "special notice" provisions, "the Nevada Legislature has written NRS Chapter

116 to allow nonjudicial foreclosure of HOA liens, subject to the special notice requirements and protections handcrafted by the Legislature in NRS 116.31162 through NRS 116.31168." *SFR*, 334 P.3d at 417. What Nevada's high court called "special notice," the majority labeled "opt-in." As for *Small Engine*, the **district court** had *mis*interpreted Louisiana's law as being "opt-in." On appeal, the **Fifth Circuit** invoked the Constitutional Avoidance Doctrine to construe Louisiana's law in a way that saved it from infirmity. *Small Engine*, 878 F.2d at 890. Either way, *Bourne Valley* confronted, instead of avoided, the Constitution.

**VII.     *BOURNE VALLEY*'S CONSTITUTIONAL ANALYSIS WAS BASED ON SPECULATION & HYPOTHETICALS**

Facial challenges are disfavored because they invite courts to "speculate about 'hypothetical' or 'imaginary' cases." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449-50 (2008). A law's facial invalidity, however, cannot be based on speculation or hypotheticals. *Id.* at 451. Here, *Bourne Valley* was more hypothetical than factual, using speculation to justify nullification. To begin with, the majority speculated about whether the Association and Wells Fargo were "aware of each other's existence." *Bourne Valley*, 2016 WL 4254983, at *5. The majority stated that "it is unclear if they were even aware of each other's existence." *Id.* Yet, Wells Fargo was aware of the Association's existence because the Association was mentioned in: (i) the PUD rider in the deed of trust (ER 149), (ii) the legal description

14

of the property in the deed of trust (ER 152), and (iii) the recorded CC&Rs (ER 31). The majority also assumed that a sophisticated party lending money on a property would fail to do a title search and not discover the CC&Rs, recorded well before the note and deed of trust were executed. Under Nevada law, recording a document gives record notice of the document and its contents. NRS 111.315; NRS 111.320. So, Wells Fargo was aware of the Association when it granted the loan. And the Association was aware of the record beneficiary when it recorded its foreclosure notices. Thus, the majority's aforementioned statements are more hypothetical than factual.

Additionally, *Bourne Valley* stated that without Nevada's law, Wells Fargo would have a fully secured interest. *Bourne Valley*, 2016 WL 4254983, at *5. This statement is based on a hypothetical. Nevada is a race-notice state. NRS 111.325. Without Nevada's law, Wells Fargo's interest—and its vulnerability—depended on the prior recorded CC&Rs. If the CC&Rs included a right to lien, a power of sale, or perfection upon recording of the CC&Rs, then the first deed of trust would be in the same position as it is under 116.3116. As such, *Bourne Valley*'s constitutional analysis was based on hypotheticals. *Wash. State Grange*, 552 U.S. at 449-50.

///

///

///

15

## VIII.   CONCLUSION

Panel or *en banc* rehearing is appropriate because *Bourne Valley* conflicts with Supreme Court cases and creates a circuit split. Ultimately, the Supreme Court's state action test has two elements; the majority's test has one. The Fifth Circuit in *Small Engine* read a Louisiana law constitutionally; the majority refused to do the same with a "similar" Nevada law. *Bourne Valley*, 2016 WL 4254983, at *4. And, Nevada's Supreme Court construed Nevada's law as requiring notice to banks; the majority described such a construction as being "meaningless." *Id.* As Judge Wallace's dissent observed, the majority pursued a "desired outcome," forgetting "[t]hat is not the role of judges." *Id.* at *10.

RESPECTFULLY SUBMITTED: August 26, 2016

By: /s/Jesse N. Panoff
Jacqueline A. Gilbert, Esq.
Jesse N. Panoff, Esq.
KIM GILBERT EBRON
7625 Dean Martin Drive, Suite 110
Las Vegas, Nevada 89139

Michael F. Bohn, Esq.
LAW OFFICES OF MICHAEL F. BOHN, ESQ., LTD.
376 E. Warm Springs Road, Suite 140
Las Vegas, Nevada 89119
*Attorneys for Plaintiff/Appellee*

## CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT RULES 35-4 AND 40-1 FOR 15-15233

I certify that pursuant to Circuit Rules 35-4 and 40-1, the attached Petition for Rehearing or Rehearing En Banc complies with the length limits permitted. The Petition is less than 4200 words, excluding the portions exempted by Fed. R. App. P. 35(b)(2) and 32. The word count, brief's type size and type face comply with Fed. R. App. P. 32(5) and (6), by using Microsoft Word 2013, Times New Roman, 14 pt. font.

Dated August 26th, 2016

/s/*Jesse N. Panoff*
Jesse N. Panoff, Esq.

17